**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **VIAD CORP., D/B/A EXHIBITGROUP/GILTSPUR** | § § § | |
| Plaintiff | § § | CASE NO. 6:04-CV-407 |
| vs. | § § | |
| **STAK DESIGN, INC.** | § § | |
| Defendant | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Viad Corp. d/b/a/ Exhibitgroup/Giltspur's ("Viad") Motion for Summary Judgment of Copyrightability (Docket No. 110). Having considered Viad's motion and Stak Design, Inc.'s ("Stak") response and having heard argument of counsel, the Court is of the opinion that Viad's motion should be **DENIED**.

**BACKGROUND AND THE PARTIES' CONTENTIONS**

On November 5, 2004, Viad sought to register seventeen kiosks as "architectural works" with the Copyright Office. On November 15, 2004, the Copyright Office informed Viad that it could not register the kiosks as "architectural works" because a "structure within a preexisting building such as a mall, designed to display items for sale, is not a work capable of sustaining an architecture claim." Thereafter, Viad filed the instant motion for summary judgment arguing that the Copyright Office erred in refusing to register the kiosks and urging the Court to find that the kiosks are in fact copyrightable.

The Copyright Act provides that "[c]opyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression. . ." 17 U.S.C. §

102(a). "Works of authorship" include "architectural works." 17 U.S.C. § 102(a)(8). "Architectural works" are defined as "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings." 17 U.S.C. 101. The term "building" is not defined by the Copyright Act. As the basis for the rejection of the seventeen kiosks at issue, the Copyright Office cited the definition of building found in 37 C.F.R. § 202.11(b)(2). That regulation states that "the term 'building' means humanly habitable structures that are intended to be both permanent and stationary, such as houses and office buildings, and other permanent and stationary structures designed for human occupancy, including but not limited to churches, museums, gazebos, and garden pavilions."

Viad argues that the Copyright Office's definition of building improperly narrows the definition of "building" that Congress intended. Specifically, Viad contends that the Copyright Office added the limitations "permanent," "stationary," and "designed for human occupancy" to the definition thereby subverting Congressional intent. As support for this assertion, Viad points to the House Report accompanying the Architectural Works Copyright Protection Act ("AWCPA") which provides that the term "building" encompasses "habitable structures such as houses and office buildings. It also covers structures that are used, but not inhabited, by human beings, such as churches, pergolas, gazebos, and garden pavilions." *See* H. R. 101-735, *reprinted in* 1990 U.S.C.C.A.N. 6935, 6351. Viad contends that its kiosks are used by human beings and share common characteristics with pergolas, gazebos and garden pavilions and that, like these structures, kiosks should be afforded copyright protection as architectural works.[1]

---

[1] For example, Viad points out that like a pergola, its kiosks have a horizontal roof structure supported on columns or posts.

While acknowledging that the Copyright Act does not explicitly define "building," Stak argues that the term has an unambiguous meaning and that Congress did not intend to include all three-dimensional utilitarian objects, such as Viad's kiosks. Stak contends that even if the term "building" is ambiguous, the legislative history does not support inclusion of kiosks as architectural works and that the elements of the Copyright Office's definition are a reasonable implementation of Congress' intent.

## STANDARD OF REVIEW

Stak appears to agree with Viad that the particular issue before the Court, whether the seventeen kiosks are copyrightable subject matter under the Copyright statute, is a legal determination the Court may make on summary judgment. *See Neff v. American Dairy Queen Corp.*, 58 F.3d 1063, 1065 (5th Cir. 1995) (noting that the proper interpretation of a statute is a legal determination). The Court agrees and will, therefore, proceed to consider the appropriate interpretation of the term "building" in the Copyright statute.

## DEFERENCE TO COPYRIGHT OFFICE

At the outset, it is important to address the degree of deference to be given to the Copyright Office's regulation interpreting the term "building." In the wake of the United States Supreme Court's decision in *United States v. Mead Corp.*, 533 U.S. 218 (2001), there is uncertainty as to whether the Copyright Office's interpretation of a particular section should be afforded "*Chevron*"[2]

---

[2]*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-845 (1984) (Congress' express delegation of authority to an agency results in the agency's regulations being binding on the courts unless arbitrary or capricious, while an implicit delegation of authority results in the courts accepting the agency's position if the agency's interpretation is reasonable)

deference or *"Skidmore"*[3] deference. *See Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 287 n.5 (3rd. Cir. 2004) (declining to decide what degree of deference to Copyright Office's regulation is warranted); *Bonneville Int'l Corp. v. Peters*, 347 F.3d 485, 490 n.9 (3rd Cir. 2003) (noting that although unnecessary to the outcome of the case, two members of the panel would have applied *Skidmore* deference, while the other would have applied *Chevron* deference to the particular Copyright Office regulation at issue). Both Viad and Stak argue that their respective positions are correct under either standard. Because the Court concludes that the Copyright Office's definition is persuasive even under the less deferential *Skidmore* standard, the Court declines to determine, as a general matter, whether *Chevron* or *Skidmore* deference should be applied to Copyright Office Regulations. *See Bonneville*, 347 F.3d at 490.

### THE PROPER INTERPRETATION OF "BUILDING"

The Court agrees with Viad that the term "building" is ambiguous. For example, as support for its contention that the term is unambiguous, Stak cites a definition of building that requires a roof. As one court has pointed out, however, would such a definition leave a structure like Fenway Park without copyright protection because it does not have a roof over its baseball diamond?[4] *See Yankee Candle Co., Inc. v. New England Candle Co., Inc.*, 14 F.Supp.2d 154, 159 (D. Mass. 1998) (noting that "the term 'building' is susceptible to numerous interpretations" and finding the term ambiguous), *vacated pursuant to settlement*, 29 F.Supp.2d 44 (D. Mass. 1998). Although other

---

[3]*Skidmore v. Swift Co.*, 323 U.S. 134, 139 (1944) (an agency's interpretation may merit some deference whatever its form, given the "specialized experience and broader investigations and information" available to the agency" and given the value of uniformity in its administrative and judicial understandings of what a national law requires).

[4]Closer to home, one wonders how Texas Stadium, a structure with a hole in the roof, would fare under some definitions of building.

examples of the ambiguity of the term could be provided, for the sake of brevity, the Court will merely conclude it is not persuaded that the term "building" possesses such clarity that one can extract an unambiguous meaning from it.

Having found that the term is ambiguous, the Court must now determine whether kiosks should be considered "buildings" under the Copyright Statute. Since the term at issue is ambiguous, legislative history may be consulted to determine the appropriate meaning. *Stone v. Caplan*, 10 F.3d 285, 289 (5th Cir. 1994). As noted above, Viad bases its argument on a portion of the legislative history underlying this portion of the AWCPA which states that a building may be "used" by human beings and cites examples like pergolas, gazebos, and garden pavilions. The problem with Viad's position, however, is that, although ambiguous, the term "building" has to mean something. Without citation to any authority,[5] Viad argues, in effect, that any three-dimensional object that may be "used" by humans is a "building" and entitled to copyright protection. Indeed, Viad appears to argue that tents, recreational vehicles, mobile homes, boats and even furniture could be entitled to architectural work copyright protection. The Court concludes that this broad approach effectively strips the term "building" of any meaning. While the legislative history refers to structures that are used by humans, the examples provided, pergolas, gazebos and garden pavilions, are all capable of being occupied as forms of shelter by humans. Viad does not contend that its kiosks are capable of being occupied. In light of the term chosen by Congress and the legislative history, the Copyright Office's definition, even under *Skidmore*, demarcating those structures that may be occupied from those that may not is reasonable and entitled to at least some deference.

The Court has previously recognized the artistic nature of the drawings depicting the kiosks

---

[5]At oral argument, the parties asserted that this issue is one of first impression.

at issue and enjoined Stak from copying, reproducing, or using these drawings in manufacturing its kiosks.[6]  The Court further recognizes the artistic nature of the kiosks themselves and perhaps the merit in legislation preventing the unauthorized reproduction of such objects.  However, this Court's role is to interpret and apply the existing laws passed by Congress.  Although this a close call, to include an object, such as those at issue here, within the definition of building would, in the Court's view, stretch the term beyond Congress' intent.  Accordingly, Viad's motion for summary judgment is **DENIED**.

**So ORDERED and SIGNED this 14th day of April, 2005.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**

---

[6] *See* Memorandum Opinion and Order (Docket No. 69).